UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HAMAL RAJESH,

                              Petitioner,

        -vs-

WILLIAM P. BARR, Attorney General;
KEVIN K. McALEENAN, Acting Secretary,
Department of Homeland Security;
THOMAS FEELEY, Field Office Director
for Detention and Removal Buffalo
Field Office Bureau of Immigration
and Customs Enforcement Department of
Homeland Security; and JEFFREY
SEARLS, Facility Director, Buffalo
Federal Detention Facility,

                              Respondents.
_____

**No. 6:19-cv-06415-MAT**
**DECISION AND ORDER**

## I.   **Introduction**

Proceeding *pro se*, Hamal Rajesh, a/k/a Rajesh Hamal ("Hamal"
or "Petitioner") commenced this habeas proceeding pursuant to
28 U.S.C. § 2241 ("§ 2241") against the named Respondents
(hereinafter, "the Government") challenging his continued detention
in the custody of the United States Department of Homeland Security
("DHS"), Immigration and Customs Enforcement ("ICE"). For the
reasons discussed below, the request for a writ of habeas corpus is
granted to the extent that the Government is ordered to afford a
new bond hearing to Hamal.

## II.   **Factual Background**

On June 13, 2018, at approximately 8:50 a.m., the San Diego

Sector Border Patrol Communications operator relayed wia agency radio of a sensor activation near a place commonly known to United States Border Patrol Agents as "Goat Canyon," an area about four miles west of the San Ysidro, California, Port of Entry. A border patrol agent responded and found four individuals lying in the brush, one of whom was Hamal. Upon questioning, the agent determined that each of the individuals was a Nepalese citizen and none of them had immigration documents allowing them to legally enter or remain in the United States. Hamal, along with the three other individuals, was arrested.

Hamal requested an interview with an asylum officer, during which he related that he attempted to enter the United States for political reasons. He explained that his life was in danger because he works for the Nepali Congress and the Maoist Party wants him to join their party. He asserted that he was beaten once and received verbal threats in Nepal.

On September 19, 2018, Hamal was served with a Notice to Appear ("NTA") alleging that he is not a citizen or national of the United States, that he is a native of Nepal and a citizen of Nepal; that he entered the United States at an unknown location on or about June 13, 2018, without a valid entry document; and that he was not admitted or paroled after inspection by an immigration officer. He was charged with being subject to removal pursuant to Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) and §

212(a)(6)(A)(i). Also on September 19, 2018, DHS determined to continue Hamal's detention. Hamal requested review by an immigration judge ("IJ") of DHS's custody determination.

On November 20, 2018, Hamal appeared for a master calendar hearing before an IJ, which was adjourned to December 18, 2018, to allow Hamal time to seek representation. Also on November 20, 2018, Hamal appeared, with counsel, for a bond hearing before an IJ. On November 21, 2018, the IJ issued a check-the-box form denying Hamal's request for a change in custody status. On December 10, 2018, Hamal appealed the IJ's bond decision to the Board of Immigration Appeals ("BIA"). The IJ subsequently issued a written bond memorandum on January 8, 2019, indicating that Hamal posed a flight risk. See Docket No. 7-2, pp. 21-23 of 31. The IJ noted that Hamal has no bank accounts, no real property, and no personal property. The IJ found that Hamal lacks substantiated family ties in the United States and that, according to Hamal's testimony at the bond hearing, he only recently met his named sponsor, a relative and lawful permanent resident, at the Albany County Jail. The IJ further observed that Hamal testified that he paid a smuggler 700,000 Nepalese rupees (about $6,300) to enter the United States, which is the equivalent of aiding and abetting a smuggler. In light of these factors, the IJ found no amount of bond could ensure Hamal's appearance at future immigration proceedings.

On December 18, 2018, Hamal appeared for a master calendar

hearing before an IJ, which was adjourned to January 29, 2019, for an individual calendar hearing on the merits.

On December 28, 2018, Hamal filed an application for relief from removal.

The individual calendar hearing scheduled for January 29, 2019, was adjourned to March 29, 2019, due to closure of the immigration court. An IJ subsequently advanced the hearing to February 19, 2019.

Hamal appeared with counsel before an IJ on February 19, 2019, for an individual calendar hearing. At the conclusion of the hearing, the IJ denied Hamal's application for relief from removal and ordered him removed from the United State to Nepal. On March 1, 2019, Hamal appealed the IJ's decision to the BIA.

On May 30, 2019, the BIA issued a decision dismissing Hamal's bond appeal and affirming the IJ's decision denying bond. On July 12, 2019, the BIA issued a decision dismissing Hamal's appeal of the removal order and affirming the IJ's decision.

Hamal, through his retained attorney, filed a petition for review ("PFR"), with the United States Court of Appeals for the Second Circuit. *Hamal v. Barr*, 19-2467 (2d Cir. Aug. 9, 2019). He also filed a motion for a stay of removal, which the Government opposed, noting that absent a stay, it will not forbear from removal after October 1, 2019. On September 11, 2019, a judge of the Second Circuit issued an order granting a temporary stay

pending review of the stay motion by a three-judge panel. <u>See</u> Docket No. 39 in *Hamal v. Barr*, 19-2467 (2d Cir. Sept. 11, 2019). Hamal's appellate brief is due December 19, 2019.

Hamal filed his habeas petition (Docket No. 1) on June 4, 2019. The Government filed an answer and return (Docket No. 7) with supporting exhibits (Docket Nos. 7-1 through 7-5) and memorandum of law in oOpposition (Docket No. 8). Hamal filed a reply (Docket No. 9). The matter was transferred to the undersigned on October 1, 2019.

## III.  Scope of Review

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland*

*Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

## IV. Discussion

### A. Overview of Petitioner's Claims

Because Hamal is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Hamal asserts that he is entitled to relief under Section 2241 on the following grounds: (1) his custody redetermination hearing before an IJ violated the Due Process Clause of the Fifth Amendment because he bore the burden of proving that he was not a flight risk or a danger to the community; (2) his detention, which commenced on June 13, 2018, has become unreasonably prolonged, thereby entitling him to another bond hearing at which the Government bears the burden of proving that he is a flight risk or a danger to the community; and (3) his detention violates the Eighth Amendment's Excessive Bail Clause.

For the reasons discussed below, the Court finds that as a matter of due process, Hamal is entitled to a second bond hearing as a matter of Due Process based on the length of his detention at which the Government bears the burden of proof by clear and convincing evidence. In light of this conclusion, the Court need not consider his claims that his initial custody redetermination hearing was procedurally flawed or that his detention violates the Eighth Amendment's Excessive Bail Clause.

### B.  Statutory Framework

The statute authorizing Hamal's detention, 8 U.S.C. § 1226(a), provides in pertinent part that "an alien may be arrested and

detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General--(1) may continue to detain the arrested alien; and (2) may release the alien on- (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole. . . ." *Id.* "In connection with § 1226(a), [DHS] promulgated regulations setting out the process by which a non-criminal alien may obtain release[,]" which "provide that, in order to obtain bond or conditional parole, the 'alien must demonstrate to the satisfaction of the [decision maker] that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1208 (11th Cir. 2016) (quoting 8 C.F.R. § 1236.1(c)(8); second alteration in original), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018). The DHS district director makes the initial custody determination; thereafter, the alien has the right to appeal an adverse decision to an IJ, and then to the BIA. 8 C.F.R. § 1236.1(d)(1), (3); *id.* § 1003.19(a), (f). If denied release from custody, a § 1226(a) detainee may seek a custody redetermination hearing upon a showing of changed circumstances. 8 C.F.R. § 1003.19(e).

While § 1226(a) is silent on the issues of which party bears the burden of proof at a custody redetermination hearing and the

quantum of evidence necessary to satisfy that burden, *see* 8 U.S.C. § 1226(a), the BIA has interpreted § 1226(a) to place "[t]he burden . . . on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond." *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *accord In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999) (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings"). The alien must show that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Guerra*, 24 I. & N. Dec. at 40. In cases issued following *Adeniji*, the BIA has reaffirmed that the alien properly bears the burden of proof; the quantum of proof is described simply as being "to the satisfaction of" the IJ and BIA. *E.g.*, *In re Fatahi*, 26 I. & N. Dec. 791, 793 (BIA 2016) ("An alien who seeks a change in custody status must establish to the satisfaction of the [IJ] and the [BIA] that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *Guerra*, 24 I. & N. Dec. at 40).

The BIA is the only forum from which an alien may seek reconsideration of the substance of an IJ's discretionary bond determination. *See* 8 C.F.R. §§ 1003.19(f), 1003.38, 1236.1(d)(3); *see also Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (noting that 8 U.S.C. § 1226(e) bars federal court review of a "discretionary

judgment" or a "decision" of the Attorney General) (citing 8 U.S.C. § 1226(e) (stating that "[n]o court may set aside any action or decision by [immigration officials] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole")). "What § 1226(e) does not bar, however, are constitutional challenges to the immigration bail system." *Pensamiento v. McDonald*, 315 F. Supp.3d 684, 688–89 (D. Mass. 2018) (citing *Jennings v. Rodriguez*, ___ U.S. ____, 138 S. Ct. 830, 841, 200 L.Ed.2d 122 (2018) (holding that challenges to "the extent of the Government's detention authority" are not precluded by § 1226(e)); *Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail [under § 1226(c)]. . . ."); other citations omitted), *appeal withdrawn sub nom. Pensamiento v. Moniz*, 18-1691 (1st Cir. Dec. 26, 2018).

Here, Hamal is not challenging the IJ's discretionary decision to keep him in detention. Instead, he is arguing that the immigration bond system, in which aliens detained pursuant to § 1226(a) must bear the burden of proving they are not dangerous and are not flight risks, violates the Due Process Clause of the Fifth Amendment. "This type of constitutional claim 'falls outside of the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment." *Pensamiento*, 315 F. Supp.3d at 689

(quoting *Jennings*, 138 S. Ct. at 841); *accord Aparicio-Villatoro v. Barr*, No. 6:19-CV-06294-MAT, 2019 WL 3859013, at *5 (W.D.N.Y. Aug. 16, 2019); *Singh v. Barr*, No. 18-CV-2741-GPC-MSB, ___ F. Supp.3d ___, 2019 WL 4168901, at *8 (S.D. Cal. Sept. 3, 2019) ("Singh's challenge . . . is plainly legal in nature; he contests that his prior hearing was legally inadequate because it was not conducted under procedures required by Due Process—i.e., with the burden of proof on the government.").

## C. Constitutional Framework

The Due Process Clause of the Fifth Amendment forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST., amend. V. The Supreme Court has emphasized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Longstanding Supreme Court precedent has underscored the principle that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). That an individual may not be a United States citizen or may not be in this country legally does not divest them of all protections enshrined in the Due Process Clause. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether

their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). The question that has continued to vex courts is the nature of the process due, for the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523 (citations omitted).

In the context of a § 1226(a) custody hearing, the Ninth Circuit has held that the Constitution mandates placing the burden of proof on the Government to show ineligibility for bail by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). The Ninth Circuit explained that "even where prolonged detention is permissible, due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quotations omitted). Several district courts have held that *Singh*'s due process analysis survived *Jennings* since the Supreme Court expressly declined to address the constitutional question.[1] *E.g., Cortez v. Sessions,* 318 F. Supp. 3d 1134, 1146–47

---

[1]

In *Jennings*, the class of habeas petitioners had originally argued that, absent a requirement for periodic bond hearings, 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) would violate the Due Process Clause. *See Jennings*, 138 S. Ct. at 839. Instead of addressing the constitutional argument, however, the Ninth Circuit employed the canon of constitutional avoidance and interpreted § 1226(a)

(N.D. Cal. 2018) ("The [*Jennings*] Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue. Accordingly, the court declines to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth Circuit cases relying on *Singh*'s reasoning."), *appeal dismissed*, No. 18-15976, 2018 WL 4173027 (9th Cir. July 25, 2018).[2]

In *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018), the Second Circuit relied on *Singh*'s constitutional avoidance analysis to hold, in the context of a criminal alien detained under § 1226(c), that due process requires a bail hearing within six months of the alien being taken into custody at which the Government must establish by clear and

---

to require "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." 138 S. Ct. at 847. But the Supreme Court held that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." *Id.* The Supreme Court reversed and remanded to the Ninth Circuit with instructions to consider the constitutional questions on the merits. *Id.* at 851. The Ninth Circuit, in turn, remanded the case to the district court without reaching the merits of the constitutional arguments. *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018), *on remand to Rodriguez v. Robbins*, Case No. 07-cv-3239-TJH-RNB (C.D. Cal.).

[2]

    *See also D. v. Sec'y of Homeland Sec.*, No. 0:18-CV-1557-WMW-KMM, 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019) ("'[B]ecause the Jennings majority and dissent were focused on whether the statutes required bond hearings, declining to reach the constitutional question at issue here, the Court is unpersuaded that Jennings has any bearing on the appropriate procedures consistent with due process.'") (quoting *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018)), *report and recommendation adopted as modified sub nom. Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp.3d 959 (D. Minn. 2019).

-13-

convincing evidence that the alien poses a risk of flight or a danger to the community. After *Lora* was decided, the Supreme Court granted *certiorari* in *Rodriguez v. Jennings*, 804 F.3d 1060 (9th Cir. 2015), and rejected the Ninth Circuit's constitutional avoidance analysis on which the Second Circuit had relied in interpreting § 1226(c). Accordingly, the Supreme Court vacated *Lora* and remanded it for further consideration in light of *Jennings v. Rodriguez*, 138 S. Ct. 830, *supra.*

On remand in *Lora*, the Second Circuit dismissed the appeal as moot because, in the interim, the petitioner had been released on bond. *Lora v. Shanahan*, 719 F. App'x 79 (2d Cir. 2018). Thus, the Second Circuit did not have occasion to revisit the constitutional question in *Lora*. Some district courts in this Circuit have held that while *Lora* is no longer precedential authority, it still carries "significant persuasive weight," *v. Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) (citing *Brown v. Kelly*, 609 F.3d 467, 476-77 (2d Cir. 2010)), on the questions of the proper burden and quantum of proof at immigration bond hearings.

A number of district courts have taken up the question left open by the Supreme Court in *Jennings*, and "there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." *Darko v. Sessions*, 342

F. Supp.3d 429, 434-36 (S.D.N.Y. 2018) (citing *Linares Martinez v. Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *32 (S.D.N.Y. Oct. 17, 2018); *Sajous*, 2018 WL 2357266, at *12; *Hernandez*, 2018 WL 3579108, at *10; *Frederic v. Edwards*, No. 18 Civ. 5540(AT), Docket No. 13 (S.D.N.Y. July 19, 2018); *Pensamiento,* 315 F. Supp.3d at 692; *Figueroa v. McDonald*, No. 18-CV-10097 (PBS), ___ F. Supp.3d ____, 2018 WL 2209217, at *5 (D. Mass. May 14, 2018); *Frantz C. v. Shanahan*, No. CV 18-2043 (JLL), 2018 WL 3302998, at *3 (D. N.J. July 5, 2018); *Portillo v. Hott*, 322 F. Supp.3d 698, 709 n.9 (E.D. Va. 2018); *Cortez*, 318 F. Supp.3d at 1145-46; *see also D. v. Sec'y of Homeland Sec.*, 2019 WL 1905848, at *6; *Diaz-Ceja v. McAleenan*, No. 19-CV-00824-NYW, 2019 WL 2774211, at *10 (D. Colo. July 2, 2019).

In concluding that allocating the burden to a noncriminal alien to prove that he should be released on bond under § 1226(a) violates due process, a number of these courts have looked for guidance to the Supreme Court's precedent on civil commitment and detention. *E.g.*, *Darko*, 342 F. Supp.3d at 434 (citing *Addington*, 441 U.S. at 425 ("In considering what standard should govern in a civil commitment proceeding, we must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest in committing the emotionally disturbed under a particular standard of proof. Moreover, we must be mindful that the function of legal process is to minimize the

risk of erroneous decisions."); other citations omitted). The
Government clearly has legitimate interests in both public safety
and securing a noncitizen's appearance at future immigration
proceedings. However, the Court cannot discern any legitimate
Government interest, beyond administrative convenience, in
detaining noncitizens generally while their immigration proceedings
are pending and no final removal order has been issued. *See
Addington*, 441 U.S. at 426 ("[T]he State has no interest in
confining individuals involuntarily if they are not mentally ill or
if they do not pose some danger to themselves or others. Since the
preponderance standard creates the risk of increasing the number of
individuals erroneously committed, it is at least unclear to what
extent, if any, the state's interests are furthered by using a
preponderance standard in such commitment proceedings."). The Court
agrees with the district court cases holding that allocating the
burden to a noncriminal alien to prove he should be released on
bond under § 1226(a) violates due process because it asks "[t]he
individual . . . to share equally with society the risk of error
when the possible injury to the individual is significantly greater
than any possible harm to the [Government]." 441 U.S. at 427. *See
Darko*, 342 F. Supp.3d at 435 ("[G]iven the important constitutional
interests at stake, and the risk of harm in the event of error, it
is appropriate to require the government to bear the burden,
particularly in light of long-established Supreme Court precedent

affecting the deprivation of individual liberty[.]") (citing *Linares Martinez*, 2018 WL 5023946 at *2); *Diaz-Ceja*, 2019 WL 2774211, at *10 (similar) (citing *Addington*, 441 U.S. at 427; *Singh*, 638 F.3d at 1203; other citations omitted).

As to the applicable burden of proof, most courts that have decided the issue have concluded that Government must supply clear and convincing evidence that the alien is a flight risk or danger to society. *See Darko*, 342 F. Supp.3d at 436 (stating that "the overwhelming majority of courts to have decided the issue" utilized the "clear and convincing" standard) (collecting cases); *but see Diaz-Ceja*, 2019 WL 2774211, at *11 (finding that the appropriate standards are ones that mirror the Bail Reform Act, i.e., the government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence) (internal and other citations omitted). As noted above, *Singh* and *Lora* required the Government to meet its burden by clear and convincing evidence, a conclusion followed by the vast majority of the district courts—and all the district courts in this Circuit—that have decided this issue.

The Court joins with these courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that detention is justified at a bond hearing under § 1226(a). *Darko*, 342 F.

Supp.3d at 436 (citations omitted).

Having found a constitutional error, the Court next examines whether such error was prejudicial to Hamal. *Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *5 (S.D.N.Y. Nov. 14, 2018) (citing *Singh*, 638 F.3d at 1205 (analyzing whether IJ's application of an erroneous evidentiary burden at bond hearing under § 1226(a) prejudiced alien detainee); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process.") (internal quotations omitted)); *Linares Martinez*, 2018 WL 5023946, at *5 (rejecting government's argument that alien detained under § 1226(a) was not prejudiced by any due process violation at first bond hearing; "the IJ plainly could have found that the single set of charges—now reduced to misdemeanors—was not enough to show, by clear-and-convincing evidence, that Linares's release would pose a danger"); *but see Darko*, 342 F. Supp.3d at 436 (finding due process error due to IJ's imposition of burden of proof on alien detained under § 1226(a); granting habeas relief and ordering second individualized bond hearing without undertaking analysis of whether alien was prejudiced by erroneous burden of proof at first bond hearing).

As an initial matter, the Court observes that BIA precedent directs IJs to consider the following factors in determining

whether an immigrant is a flight risk or poses a danger to the community: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *Matter of Guerra*, 20 I & N Dec. at 40.

Here, Hamal has not resided in the United States, as he was apprehended upon attempting this country. However, has a relative who is lawful permanent resident and who is willing to sponsor him. While he does not have any employment history in the United States, he worked for the Nepali Congress until he decided to flee Nepal, citing fear of persecution by the Maoist Party. Hamal has not missed any immigration court appearances and has no criminal record. His entry into this country was illegal, but he has not attempted to escape DHS custody or avoid prosecution.

The IJ found that Hamal poses a flight risk because, notwithstanding the "various support letters submitted on [his] behalf," he "has no bank accounts, no real property, and no

-19-

personal property," he "has a lack of substantiated family ties" since he "only recently met his named sponsor at the Albany County Jail," and he "paid a smuggler 700,000 Nepalese Rupees to enter the United States, which is the equivalent of aiding and abetting a smuggler." Docket No. 7-2, p. 22 of 31 (footnote omitted). The IJ then summarily concluded that there was "no amount of bond that could ensure [Hamal's] appearance in future proceedings." *Id.*, p. 23 of 31.

Comparing Hamal's circumstances against the *Guerra* factors, his case for release on bond presents both positive and negative equities. While DHS opposed the bond request, there is no indication that counsel actually submitted any evidence on any of the *Guerra* factors in opposition to Hamal's request to be released from custody. Thus, this is a situation where "the standard of proof could well have affected the outcome of the bond hearing." *Singh*, 638 F.3d at 1205. Because the Court "cannot conclude that the clear and convincing evidence standard would not have affected the outcome of the bond hearing[,]" *Singh*, 638 F.3d at 1205, the Court finds that the standard of proof applied at the bond hearing prejudiced Hamal. *Id.* Habeas relief accordingly is warranted to the extent that Hamal must be afforded a new bond hearing before an IJ at which the Government must adduce clear and convincing evidence that he is a flight risk (there is no suggestion in the record that Hamal was or is a danger to the community).

## V.    Conclusion

For the foregoing reasons, the Petition for a writ of habeas corpus is granted to the extent that, within ten days of the date of entry of this Decision and Order, the Government shall bring Hamal before an IJ for an individualized bond hearing. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that he is a flight risk. If the Government fails to provide Hamal with such a bond hearing within ten days, the Government shall immediately release him. If the Government holds the required bond hearing but fails to prove, by clear and convincing evidence, that Hamal is a flight risk, the Government must release him on bail with appropriate conditions. The Government is further ordered to provide a status report to this Court within five days following the completion of the bond hearing. The Clerk of Court is directed to close this case.

**SO ORDERED.**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:      October   , 2019
            Rochester, New York.